## SHAWMUT NATIONAL BANK *vs.* GILBERT MANSON & others.

Suffolk.    March 16, 1897. — May 21, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Check — Bona Fide Holder for Value.*

A check deposited with a bank on the day of its date cannot be considered as overdue when so deposited.

If a bank receives a check from the payee, who indorses it, and the bank credits the amount thereof to the payee in his account as depositor, and permits the payee to draw against it before it receives notice through the clearing-house that the check has been dishonored, the bank must be regarded as a *bona fide* holder for value.

CONTRACT, upon a check, for $892.50, signed by the defendant Manson, payable to the order of and indorsed by the defendants A. D. Pennycuick and Company, dated December 21, 1895, and containing under the name of the indorser the words, "Endorsement guaranteed.   Pay only through Clearing House to Shawmut National Bank, Boston.   J. C. Tufts, Cashier."

The defendants Pennycuick and Company filed a general denial, but did not appear at the trial.   The defendant Manson filed a general denial, and also set up that the check was tainted with illegality, in that it was given in settlement of margins on stock; that the contract was contrary to the provisions of Pub. Sts. c. 78, and St. 1890, c. 437; that except as aforesaid there never was any value or consideration for the making of the check by the defendant, and the plaintiff was not a *bona fide*

holder for value; that the payee as part of the contract agreed to hold the check and not to use it, but to return it to the defendant should the payee continue in the business of stock buying, and not be obliged to make an assignment or be put into insolvency; that the payee parted with the check contrary to this agreement, and in fraud of the defendant Manson's rights; and that the plaintiff was not a *bona fide* holder for value.

Trial in the Superior Court, without a jury, before *Hammond*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff having introduced the check, the defendant Manson introduced evidence tending to support the defence alleged in the answer, of fraud and illegality. The plaintiff then, by its paying teller and bookkeeper, showed that the check in suit was deposited with it in the ordinary course of business, and without any special understanding or agreement regarding the same, on Saturday, December 21, 1895, and was then passed on the books of the bank to the credit of Pennycuick and Company; that the check went through the Clearing House and was presented to the bank on which it was drawn on Monday, December 23, when it was refused payment, and returned to the plaintiff; that on the opening of the day's business on December 21, there was standing to the credit of Pennycuick and Company a balance of about $68; and that on Monday, December 23, and before the check was returned to the plaintiff, Pennycuick and Company presented their own check for $1,000, which the paying teller, not knowing that the check in suit had been dishonored, paid. The paying teller testified further, that, according to the usage prevailing between banks and their depositors, checks deposited with them were credited to the depositor and forwarded through the Clearing House for collection, and that the depositors were not entitled to draw against the deposits until such checks had been paid; that in this case there was no special understanding regarding the check in suit, that it had not been treated differently from any other checks deposited in the usual course of trade, and that, at the time the $1,000 draft was paid, the teller understood there was that amount to Pennycuick and Company's credit. There was also evidence tending to show that the plaintiff bank was a

member of the Clearing House Association, according to whose written constitution it was provided " that they, the said banks, receive checks and items payable by other banks for collection as agents only, and do not hold themselves liable for any loss or damage which may accrue through the default of any bank or banks upon which said checks and other items may be drawn."

The defendant asked the judge to rule:

" 1. If the check in suit was given in settlement of margins, the check was tainted with illegality.   2. If the defendants Pennycuick & Co. were to hold the check, and, contrary to agreement, put it in circulation, the check was tainted with fraud. 3. The deposit of the check in suit being made without any special agreement, it must be treated as made in the usual course of business, and the plaintiff was the holder simply as an agent for collection, and not as a purchaser.   4. The fact that the plaintiff bank paid out on December 23 a sum in excess of the amount of the check, does not make it a holder for value. 5. The plaintiff has no case against Manson, on all the facts as stated."

The judge refused so to rule, and ruled : " Without passing upon the question of fraud or illegality, I find the plaintiff is a *bona fide* holder for value."

The judge found for the plaintiff ; and the defendant Manson alleged exceptions.

*E. B. Callender*, for the defendant Manson.

*W. B. French*, for the plaintiff.

FIELD, C. J.   The finding of the court, that " the plaintiff is a *bona fide* holder for value," renders the first two requests of the defendant Manson for rulings immaterial.   The check was deposited with the plaintiff on the day of its date, and therefore cannot be considered as overdue when it was taken by the plaintiff.   See *Ames* v. *Merriam*, 98 Mass. 294; *First National Bank of Rochester* v. *Harris*, 108 Mass. 514; *Bill* v. *Stewart*, 156 Mass. 508.

The plaintiff received the check from the payees, who indorsed it, and credited the amount of the check to the payees in their account as depositors, and permitted the payees to draw against it before it received notice through the Clearing House that the check had been dishonored.   This made the bank a holder for

value, and there is no doubt that the evidence sustains the finding that the bank received the check in good faith.   See *Fulton National Bank* v. *Gosline, ante*, 86.

*Exceptions overruled.*